UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>         Plaintiff,<br> v.<br><br>Rahulkumar M. Patel,<br> aka Rahul Patel,<br>         Defendant. | Civil Action No. 21-cv-<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against the defendant:

## SUMMARY

1. This is a securities fraud enforcement action. Defendant Rahulkumar M. Patel, aka Rahul Patel ("Patel"), devised and executed a scheme to defraud investors through a private offering to purchase membership units, specifically referred to as securities, in a purported hotel venture that Patel controlled ("the hotel renovation project"). Patel's fraudulent scheme began as early as February 2018 and continued well into 2020. Between October and December 2018, Patel raised approximately $2,750,500 from 70 investors who purchased membership units in DNA Lodging East Hartford LLC ("DNA East Hartford"), Patel's limited liability company. DNA East Hartford, through Patel, represented to investors that it intended to use their invested money to lease, renovate, and reopen a hotel. Instead, Patel used material misrepresentations and omissions, and a device, scheme and artifice to defraud, and diverted at least $925,000 of investor funds for his own personal benefit.

1

2. Patel initiated the fraudulent offering using a September 21, 2018, 50-page private placement memorandum ("PPM") for which he was a primary drafter and editor. The PPM set out the purported terms of the investment and the proposed hotel renovation project. Patel provided the PPM, along with other offering documents, to an online crowd funding platform for dissemination to interested investors, which was done.

3. The PPM and other offering documents used by Patel were materially misleading and deceived investors regarding the terms of their investment. The offering materials represented that, as part of the hotel renovation project, DNA East Hartford would obtain a ground lease for $540,000, plus an undefined "assignment cost" of $925,000. Patel did not tell investors that the "assignment cost" (i.e. one third of the funds raised from investors) was going directly and immediately to him, as well as other material misrepresentations and omissions.

4. To funnel the $925,000 to himself, in February 2019, Patel orchestrated a complex, layered, and purposely deceptive transaction involving the real owner of the property involved in the lease and a newly-formed LLC – which he created and controlled, and to which he gave the same name as the property's actual owner. By using the same name for this newly created company, and other means, Patel concealed from investors that there were really two companies involved on the "lessor" side of the transaction: the actual owner of the property, and his own newly-created company. Once the new LLC was injected as an intermediary between DNA East Hartford and the actual owner, Patel used it as a vehicle for diverting the $925,000 "assignment cost" to himself.

5. Patel used diverted investor funds to advance the fraud and for at least $750,000 in personal expenses including: $87,500 in payments to a yacht club, approximately $46,000 on

travel and entertainment at casinos and elsewhere; and approximately $14,000 in direct cash withdrawals.

6. As a result of the conduct alleged herein, Patel violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

7. The Commission seeks a permanent injunction against Patel, enjoining him from engaging in transactions, acts, practices, and courses of business of the type alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and/or Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

8. In addition, the Commission seeks a conduct-based injunction against Patel, permanently enjoining him from directly or indirectly, including, but not limited to, through any entity owned or controlled by Patel, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer, unless (i) Patel provides each potential purchaser of the issued/offered securities with a copy of any Final Judgment in this matter simultaneous with the first written (electronic or otherwise) communication sent to such potential purchaser by or on behalf of Patel or any entities he owns or controls, and (ii) Patel provides each current owner/holder of the offered/issued securities with a copy of any Final Judgment in this matter within 45 days from the entry of such order.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act [15 U.S.C. §77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), and 78aa].

10. Venue lies with Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa]. Patel resides in the District of Connecticut. In addition, certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the District of Connecticut, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails. For example, the hotel renovation project was located in Connecticut and multiple companies used by Patel during the course of his fraudulent scheme were Connecticut limited liability companies.

## DEFENDANTS

11. Rahulkumar M. Patel, aka Rahul Patel, age 46, is a resident of Riverside, Connecticut.

## RELATED INDIVIDUALS AND ENTITIES

12. DNA Lodging East Hartford LLC ("DNA East Hartford") was a Connecticut limited liability company organized by Patel.

13. DNA Lodging LLC ("DNA Lodging") was a Connecticut limited liability company that Patel organized, purportedly to pursue investment opportunities in the hotel industry. Patel controlled DNA East Hartford through DNA Lodging, which operated indirectly as the former's managing member.

14. DNA Lodging East Hartford MM LLC ("DNA Manager") was a Connecticut limited liability company organized and controlled by Patel, of which DNA Lodging owned 100%.

15. 363 Roberts Partners LLC ("363 Roberts-CT") was a Connecticut limited liability company with a principal office located in College Point, New York that had no affiliation or connection with Patel other than through business dealings.

16. A second entity with exactly the same name, 363 Roberts Partners LLC ("363 Roberts-TX"), was a Texas limited liability company controlled by Patel.

17. M7 Investment Fund I LLC ("M7 LLC"), was a New Jersey limited liability company organized, managed, and fully owned by Patel. M7 LLC owned 5.01% of DNA Lodging.

18. Person 1, age 43, is a childhood friend of Patel who operated a sports therapy business in Lubbock, Texas.

## PATEL'S FRAUDULENT OFFERING SCHEME

### Patel Establishes and Controls a Series of Related Companies

19. In approximately January 2018, Patel established DNA Lodging purportedly to pursue investment opportunities in the hotel industry. In the same time frame he also established DNA East Hartford and DNA Manager. DNA Lodging owned 100% of DNA Manager which, in turn, owned 10% of DNA East Hartford. DNA East Hartford's Certificate of Organization filed with the State of Connecticut identified DNA Lodging as its agent, DNA Manager as its managing member, and "Rahul Patel" as its organizer.

20. In approximately May 2018, Patel created an "Operating Agreement of DNA Lodging LLC." DNA Lodging's Operating Agreement identified three individuals ("the DNA Partners") as owners of 94.99% of the company, with the remaining 5.01% owned by M7 LLC, a New Jersey company owned, managed and controlled by Patel. Unlike Patel, each of the DNA Partners had significant years of experience in the hotel industry. Each of the DNA Partners was

5

acquainted with Patel, who approached each of them individually and requested that they assist him by providing their names and resumes for the hotel venture. The respective DNA Partners agreed to the arrangement, and Patel paid each of them $20,000, but complete control of DNA Lodging remained with Patel.

### Patel Raises $2,750,500 with a Fraudulent Offering of Membership Interests in DNA East Hartford

21.     Through a series of communications, including emails and telephonic, Patel developed, wrote, and edited a Confidential Private Placement Memorandum ("the PPM"), dated September 21, 2018, for two of the entities he controlled, DNA Lodging and DNA East Hartford. Patel had ultimate authority over the statements in the PPM, as well as related offering materials, including its content and whether and how to communicate it.

22.     The PPM specified that DNA East Hartford had been formed specifically to:

(i) acquire a leasehold interest, with a land purchase option, in the 130-key hotel located at 363 Roberts Street, East Hartford CT;

(ii) renovate the existing hotel into 140 keys; and,

(iii) operate the hotel under the brand name of a major hotel chain.

The PPM offered "Units of LLC Membership Interests" ("units") for a minimum investment of $25,000 and had a target offering of $2,750,000.

23.     Patel arranged for the PPM and other offering documents to be used in a private offering of securities conducted through an online crowd funding platform. Patel, through the online platform, began the private offering shortly after September 21, 2018, and between October and December 2018, successfully raised $2,750,500 from the sale of investment units in DNA East Hartford to 70 investors nationwide.

24.     The PPM and other related offering documents were materially misleading and

deceived investors regarding the terms of their investment and the nature of the project.

25. According to the PPM and other offering documents, DNA East Hartford would use proceeds from the offering to lease and refurbish a hotel, and to re-open it under the brand name of a major chain. The PPM identified the location of the hotel, and the property to be leased, as 363 Roberts Street, East Hartford CT.

26. The "Overview: Investment Opportunity" section of the PPM described a "Low Cost Entry" of a "$1,465,000 lease purchase (including $925k assignment cost) with an option to buy land for $3.3MM within 5 years." Neither the overview section nor any other section of the PPM, or any other offering materials provided to investors, disclosed that the "$925K assignment cost" was, in fact, an immediate and direct diversion of roughly one-third of investor funds to Patel, which he used for his personal benefit. The omission of that information was material and misled investors about how their invested money would be used.

27. The PPM developed and used by Patel to acquire investors also was materially misleading as to how and from who DNA East Hartford would acquire the lease it described. According to the PPM, DNA East Hartford would obtain a lease from the property owner, described in the PPM as "363 Roberts Partners LLC," which was a limited liability company based in Connecticut ("363 Roberts-CT"). DNA East Hartford was specifically listed in the PPM as the "Tenant," and 363 Roberts-CT was identified as DNA East Hartford's landlord once it became owner of the leasehold interest.

28. Neither the PPM nor any other offering materials provided to investors disclosed or suggested another tenant or any other party to the described leasing deal. Specifically, Patel, through the offering materials or otherwise, did not disclose to investors that he had acquired the lease from the actual owner of the property located at 363 Roberts Street for $540,000, and that

7

he had then assigned the lease to DNA East Hartford for $1,465,000, a mark-up of $925,000. Patel completed this "bait and switch" by orchestrating a "double closing" on February 7, 2019, with 363 Roberts-CT (the actual property owner) granting a ground lease for the hotel to 363 Roberts-TX *(*Patel's newly created LLC) for $540,000.  363 Roberts-TX simultaneously executed an "Assignment and Assumption of Lease" that assigned the ground lease to DNA East Hartford for a "final closing price" of $1,465,000.  The omission of that information was material and misled investors about Patel's direct role in the transaction, his conflict of interest, and the financial gain he would receive.

29. Patel also misled investors about possible sources of compensation that he, or entities he controlled, might receive as a result of the project and their investments.  While Patel listed a variety of ways he could be compensated for his role in the project, he omitted from the PPM, Company Agreement, and any other information provided to investors, that Patel (or anyone else associated with any of the entities he controlled) would take any compensation in connection with any assignment of the lease.  The omission of that information was material and misled investors.

30. Specifically, the PPM and Company Agreement identified potential compensation for Patel, in relevant part, as (a) a one-time "Acquisition" fee in the amount of $165,000, due at the purchase of the hotel, (b) a one-time Financing Consulting Fee of $123,000, due upon the closing of the renovation financing;  (c) 50% of a one-time "Renovation/Construction Management" fee equal to $425,000 (so $212,500) or 5% of the total budget required to open the hotel, and (d) a share in revenues once the renovated hotel became profitable and investors were repaid.

31. Most of the triggers for this potential compensation for Patel never even

materialized. The DNA East Hartford project ended up in shambles. The hotel site remains vacant, damaged, and idle years after its renovations should have been completed. And, by at least May 2020, Patel failed to provide investors the quarterly financial reports required by the Company Agreement or to respond to their inquiries about the status of the hotel renovations, and his entire fraudulent scheme unraveled.

32.  The PPM also misled investors about the management of the project by identifying each of the three DNA Partners as principals of DNA Lodging. In fact, the DNA Partners were, at best, figureheads who would not be involved in the hotel renovation project beyond lending their names and resumes to bolster DNA Manager's purported bona fides. Patel, not the DNA Partners, was the real and sole "principal" of DNA Lodging and it was he, not those three, who managed and controlled the project.

33.  Along with the material omissions in the offering materials, Patel advanced the fraud by using the deceptive device of creating a new LLC – which he controlled – with the same name as the actual owner of the property at 363 Roberts Street. Patel knew that the actual owner of the property was 363 Roberts-CT, a limited liability company organized in Connecticut. On or about February 27, 2018, Patel arranged to register with the Secretary of State in Texas a limited liability company with the exact same name as the Connecticut LLC – 363 Roberts Partners LLC. By using the same name for this newly created company, Patel concealed from investors that there were really two companies involved in the leasing arrangement: the actual owner of the property, and his own newly-created company, 363 Roberts-TX. The Texas-registered LLC served only as a vehicle to funnel investors' money to Patel.

34.  Patel carried out this aspect of the deceptive scheme and device by, among other things, enlisting a childhood friend (Person 1) to be listed as the owner and sole principal of 363

Roberts-TX.  Patel formulated the idea to create the Texas-registered LLC , directed all of the actions to generate and file a Certificate of Formation in Texas, and provided Person 1 with $50,000 of investor funds in return for Person 1 having lent his name as "Managing Member" of the LLC and related tasks.  At all times Patel controlled all actions related to 363 Roberts-TX, but nowhere on any materials relating to the LLC does his name appear.

35.     An additional step in his deceptive scheme and device was the "double closing" on February 7, 2019, with 363 Roberts-CT (the actual property owner) granting a ground lease for the hotel to 363 Roberts-TX *(*the LLC Patel controlled) for $540,000, and 363 Roberts-TX simultaneously executing an "Assignment and Assumption of Lease" that assigned the ground lease to DNA East Hartford for a "final closing price" of $1,465,000.  Patel swiftly and surreptitiously pocketed the $925,000 mark-up.

**Patel Uses Investor Funds for Personal Expenses and To Advance His Fraud**

36.     Between October and December 2018, approximately $2,750,500 from the sale of investment units to 70 investors was deposited into DNA East Hartford's bank account.  Almost immediately after investment money began coming in, and from at least the period October 2018 to February 2019, Patel transferred proceeds of the offering from DNA East Hartford's bank account to bank accounts in the names of DNA Lodging, M7 LLC, and 363 Roberts-TX, all of which he controlled.  Without disclosure to investors, he then used monies from those accounts for personal expenses, including:

(a) $761,365 to pay Patel's personal expenses including $87,500 in payments to a yacht club, approximately $46,000 on travel and entertainment at casinos and elsewhere; and approximately $14,000 in cash withdrawals;

(b) $50,000 to pay Person 1 for setting up 363 Roberts-TX; and

(c) $60,000 in total to the DNA Partners ($20,000 each) in return for lending their names and extensive hotel industry credentials to DNA Lodging, DNA Manager, and the project.

Patel also:

(a) used $12,500 of investor proceeds to make an additional payment to a yacht club directly from the DNA East Hartford account; and

(b) transferred another $69,999 from the DNA East Hartford account to his personal bank account.

## FIRST CLAIM FOR RELIEF
## FRAUD IN THE OFFER OR SALE OF SECURITIES
### (Violations of Sections 17(a) of the Securities Act by Patel)

37. Paragraphs 1 through 36 above are re-alleged and incorporated by reference as if fully set forth herein.

38. At all times relevant to the above allegations, the Units of Membership Interests in DNA East Hartford were securities under Section 2(a)(1) of the Securities Act [15 U.S.C. §77b(a)(1)].

39. By engaging in the conduct described above, defendant Patel, in the offer or sale of securities, by use of the means or instruments of interstate commerce or of the mails, directly or indirectly has:

(a) employed devices, schemes and artifices to defraud;

(b) obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c) engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon purchasers or prospective purchasers.

40. Defendant Patel acted intentionally, with severe recklessness and at least negligently in the fraudulent conduct described above.

41. By reason of the conduct described above, defendant Patel violated Section 17(a) of the Securities Act [15 U.S.C. §77q(a)] and will continue to do so unless enjoined.

## SECOND CLAIM FOR RELIEF
## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by Patel)

42. Paragraphs 1 through 36 above are re-alleged and incorporated by reference as if fully set forth herein.

43. At all times relevant to the above allegations, the Units of Membership Interests in DNA East Hartford were securities under Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c(a)(10)].

44. Defendant Patel, in connection with the purchase and sale of securities, by the use of the means and instruments of interstate commerce and by the use of the mails, directly or indirectly:

>(a) used and employed devices, schemes and artifices to defraud;
>
>(b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and
>
>(c) engaged in acts, practices, and courses of business which operated or would have operated as a fraud and deceit upon purchasers and prospective purchasers of securities.

45. Defendant Patel acted with scienter in that he knowingly or with severe recklessness made the material misrepresentations and omissions and engaged in the fraudulent conduct and/or scheme described above.

46. By reason of the conduct described above, the defendant violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5] and will continue to do so unless enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A.      Enter a permanent injunction restraining defendant Patel, his agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating Sections 17(a) of the Securities Act [15 U.S.C. §§77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

B.      Enter a conduct-based injunction against Patel, permanently restraining him from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer, unless (i) Patel provides each potential purchaser of the issued/offered securities with a copy of any Final Judgment in this matter simultaneous with the first written (electronic or otherwise) communication sent to such potential purchaser by or on behalf of Patel or any entities he owns or controls, and (ii) Patel provides each current owner/holder of the offered/issued securities with a copy of any Final Judgment in this matter within 45 days from the entry of such order.

C.      Order the defendant to disgorge, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint;

D.      Order the defendant to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

E.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F. Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

DATED this 21st day of July, 2021.

 Respectfully submitted,

*//s//  Martin F. Healey*
Martin F. Healey (D. CT. Bar No. 25093;
 Mass. Bar No. 227550)
Susan Cooke Anderson (D.C. Bar No. 978173)
Ellen Bober Moynihan (Mass. Bar No. 567598)
Susan Curtin (Mass. Bar No. 554550)

SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
Phone: (617) 573-8952 (Healey direct)
Fax: (617) 573-4590 (fax)
HealeyM@sec.gov (Healey email)