## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | 3:21-CV-994 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAHULKUMAR M. PATEL, | ) | July 12, 2022 |
| *Defendant*. | ) | |

## RULING AND ORDER ON DEFENDANT'S MOTION TO APPOINT COUNSEL, <u>MOTIONS TO VACATE DEFAULT ENTRY</u>

Sarala V. Nagala, United States District Judge.

Plaintiff, the Securities and Exchange Commission (the "SEC"), brought a two-count civil enforcement action against Defendant, Rahulkumar Patel. Plaintiff contends that Defendant committed fraud in the offer, purchase, and sale of securities in violation of the Securities Act of 1933, 15 U.S.C. § 77q(a), and the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by orchestrating an elaborate investment scheme intended to defraud investors. Though Plaintiff initiated this action nearly one year ago, Defendant has only recently appeared to defend the case *pro se*.

Five motions are currently pending before the Court. Plaintiff has moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) due to Defendant's timely failure to appear and respond to the complaint. ECF No. 14. In addition, Defendant has moved to appoint *pro bono* counsel. ECF No. 16. Finally, Defendant has filed three motions that the Court will construe as motions seeking to vacate the default, which was entered by the Clerk in January of 2022. ECF Nos. 18, 20, 22; *see also* ECF No. 13. For the reasons described below, the Court denies Defendant's motion to appoint counsel. However, now that Defendant has appeared, the

Court finds good cause to vacate the default entry, rendering Plaintiff's motion for default judgment moot.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The complaint alleges that, between 2018 and 2020, Defendant devised a scheme to defraud investors through an offer to purchase membership units in a hotel renovation venture. Compl., ECF No. 1 ¶ 1.  According to Plaintiff, Defendant created a series of limited liability companies, some operating within Connecticut and others operating in other states, which ultimately formed a chain of ownership tracing back to Defendant.  *Id.* ¶ 19; *admitted* Ans., ECF No. 23 ¶ 19.  In September of 2018, Defendant created an offering memorandum representing that one of the companies, DNA Lodging East Hartford LLC ("DNA East Hartford"), was formed to acquire a leasehold interest and land purchase option in a hotel property located in East Hartford, Connecticut.  Compl. ¶ 22; *admitted* Ans. ¶ 22.  The memorandum represented that DNA East Hartford would renovate the hotel and operate it under the brand name of a major hotel chain. Compl. ¶ 22.  Defendant used the memorandum to privately offer the purchase of membership units, which Plaintiff contends constituted securities as defined by the Securities Act and Securities Exchange Act.  *Id.* ¶ 23; *admitted* Ans. ¶ 23.  By December of 2018, Defendant had allegedly raised $2,750,500 from the sale of the securities to investors nationwide.  Compl. ¶ 23.

Plaintiff alleges, however, that the memorandum was "materially misleading and deceived investors regarding the terms of their investment and the nature of the project."  Compl. ¶ 24.  In particular, Plaintiff contends that the memorandum did not disclose the chain of company ownership tracing from DNA East Hartford to Defendant or the significant portion of the investments that would be retained by Defendant.  *Id.* ¶¶ 27–30.  Plaintiff further contends that, around 2020, Defendant failed to provide quarterly financial reports to the investors as required

by the DNA East Hartford's operating documents or otherwise respond to the investors' inquiries regarding the status of the hotel renovation project. *Id.* ¶ 31. Plaintiff represents that the hotel renovation project "ended up in shambles." *Id.*

Plaintiff filed the present two-count civil enforcement action in July of 2021, contending that Defendant's scheme constituted fraud in the offer, purchase, and sale of securities in violation of the Securities Act of 1933, 15 U.S.C. § 77q(a), and the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Compl. ¶¶ 41, 46. Plaintiff seeks monetary and injunctive relief, including: a permanent injunction restraining Defendant from violating these federal statutes; a permanent injunction restraining Defendant from "participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer," subject to certain terms; an order that Defendant disgorge "all ill-gotten gains" along with prejudgment interest; and an order that Defendant pay civil monetary penalties in accordance with federal law. Compl. at 13.

On August 19, 2021, Plaintiff served Defendant with the summons and complaint and subsequently filed proof of service. ECF No. 6. Pursuant to Federal Rule of Civil Procedure 12(a), the deadline for Defendant to respond to the complaint was September 9, 2021. In December of 2021, because Defendant had not responded to the complaint or otherwise appeared to defend the case, the Court ordered Plaintiff to move for default in accordance with Federal Rule of Civil Procedure 55 if Defendant had not appeared by January 7, 2022.

Plaintiff moved for default entry, which the Clerk granted. ECF Nos. 12, 13. On February 18, 2022, Plaintiff timely filed a motion for default judgement. ECF No. 14. On February 28, 2022, Defendant filed a notice of *pro se* appearance and, a few days later, a motion seeking appointment of *pro bono* counsel. ECF Nos. 15, 16.

Thereafter, the Court acknowledged that Defendant had appeared and ordered Defendant to file, by March 25, 2022, (1) a motion to vacate the default entry and explaining why he did not timely respond to the complaint, and (2) a response to the complaint. ECF No. 17. Defendant filed two motions, both of which the Court will construe as motions to vacate the default entry given that they reference sealed medical information purporting to explain why Defendant did not timely respond to the complaint and why Defendant requires the assistance of *pro bono* counsel. ECF Nos. 18, 20. Thereafter, the Court noted that Defendant had not fully complied with the Court's order requiring him to file a responsive pleading to the complaint. ECF No. 21. The Court granted Defendant one further extension, until June 21, 2022, to file an answer or other responsive pleading, and further advised Defendant to file a response to Plaintiff's motion for default judgment by that date. *Id.* On that date, Defendant filed ECF No. 22, another motion seeking to vacate the default entry and seeking appointment of *pro bono* counsel, as well as ECF No. 23, an answer to the complaint.

## II.     MOTION TO APPOINT *PRO BONO* COUNSEL

### A. Legal Standard

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68-69 (2d Cir. 2011). *See also Sec. & Exch. Comm'n v. Curshen*, No. 08 Civ. 7893 (PGG), 2013 WL 411367, at *3 (S.D.N.Y. Feb. 1, 2013) (denying a motion to appoint counsel for a *pro se* defendant in an SEC civil enforcement action). "Broad discretion lies with the district judge in deciding whether to appoint counsel[.]" *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) (citation omitted)); *see also* 28 U.S.C. § 1915(e)(1) (permitting district court to appoint *pro bono* counsel for indigent litigant). However, an appointment of *pro bono* counsel "must be done carefully in order to

preserve the 'precious commodity' of volunteer lawyers for those litigants who truly need a lawyer's assistance." *Amerio v. Gray*, No. 5:15-CV-538 (DNH/TWD), 2019 WL 7599892, at *1 (N.D.N.Y. Apr. 18, 2019) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172–73 (2d Cir. 1989)).  To that end, the Second Circuit has cautioned the district courts against the "routine appointment of counsel." *Cooper*, 877 F.2d at 174.

Before an appointment of *pro bono* counsel for an indigent litigant is considered, the indigent person must demonstrate that he tried, but was unable, to secure counsel.  *Hodge*, 802 F.2d at 61.  *See also Jenkins v. Chem. Bank*, 721 F.2d 876, 880 (2d Cir. 1983) (explaining that, in considering a Title VII *pro se* plaintiff's application for *pro bono* counsel, the court should "assess a plaintiff's ability to afford a private attorney, although the litigant need not be destitute before an appointment is made").  Then, the district court must "determine whether the indigent's position seems likely to be of substance."  *Hodge*, 802 F.2d at 61; *see also Cooper*, 877 F.2d at 171 (emphasizing that an indigent litigant must "first pass the test of likely merit").  If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including "the [movant's] ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the [movant's] apparent ability to present the case, the complexity of the legal issues involved and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Hodge*, 802 F.2d at 61–62.

## B.  Discussion

First, the Court acknowledges that Defendant has reasonably demonstrated that he is unable to afford or otherwise obtain a private attorney.  Because he did not initiate this action, Defendant had no occasion to seek *in forma pauperis* status, which is the typical basis on which a court

determines whether a *pro se* plaintiff is indigent.  *See McCaffrey v. Gatekeeper USA, Inc.*, No. 14-CV-493 (VSB), 2022 WL 2358474, at *3 (S.D.N.Y. June 30, 2022).  However, Defendant's motion to appoint counsel represents that he has been unemployed for medical reasons since 2019, has no weekly income, has no checking or savings accounts, and has substantial debts.  ECF No. 16 at 2–3.  He further represents that he contacted three attorneys, each of whom required a retainer fee greater than he could afford.  *Id.* at 4–6.  Because these representations were made under penalty of perjury, the Court accepts them as true and adequate to establish that Defendant is unable to afford or otherwise obtain an attorney.  *See Johnson & Johnson v. S. Pointe Wholesale*, No. 08-CV-1297 (SLT), 2009 WL 10706651, at *1 (E.D.N.Y. June 2, 2009) (finding financial hardship where the *pro se* litigant's application represented that he was unemployed, owed substantial back taxes to the government, and could not afford the retainer fees of the lawyers he contacted); *McCaffrey*, 2022 WL 2358474, at *3 (crediting the defendants' representations that they suffered "severe financial hardship" and were unable to afford retainer fees);

However, at this early stage of the litigation, the Court cannot conclude that Defendant has demonstrated the likely merit of his defense.  Some courts in the Second Circuit have noted that, when an application for appointment of *pro se* counsel is made by a defendant, it is often difficult for the court to discern whether the defendant's defenses are likely to be of substance.  *See Johnson & Johnson*, 2009 WL 10706651, at *1; *McCaffrey*, 2022 WL 2358474, at *3 (quoting *Johnson & Johnson*, 2009 WL 10706651, at *1, for the proposition that "it is not necessary" for a defendant to demonstrate the requisite merit of their case "in the same sense a plaintiff would").  But a defendant must demonstrate more than has been shown in this case.  Defendant's motion to appoint counsel makes no mention of any substantive defense or the merits of Plaintiff's action.  Defendant's answer raises no affirmative defenses; he simply denies the majority of Plaintiff's

allegations and admits various allegations concerning the formation of the limited liability companies and the preparation and dissemination of the memorandum to potential investors. *See generally* Ans. Accordingly, the Court cannot meaningfully assess whether his defense is likely of substance.

The Court acknowledges that various other factors may weigh in favor of appointment of *pro bono* counsel in this case. For example, one court in the Second Circuit found that a *pro se* litigant's health impairments, such as the lingering effects of a stroke, weighed in favor of an appointment of *pro bono* counsel. *See Tinaway v. Merrill Lynch & Co.*, 661 F. Supp. 937, 941 (S.D.N.Y. May 20, 1987) (explaining that the litigant was a "seventy eight year old stroke victim who is virtually deaf and who has difficulty walking"). Here, however, Defendant's motion to appoint counsel represents merely that he suffered a stroke in 2019 and that his physician "has [him] at less than 100%." ECF No. 16 at 3. Defendant submitted an exhibit, a brief, sealed letter from his neurologist, which describes his symptoms as muscle weakness, aphasia affecting his language, and seizures. ECF No. 18 at 3. However, none of Defendant's filings elaborate on the severity of those impairments or how they impact his ability to defend this case.

In addition, the district court in *Tinaway* reasoned that the *pro se* litigant should receive the assistance of *pro bono* counsel because "the legal issues raised in [the] complaint are federal securities fraud claims which are of sufficient complexity to require representation by counsel in order to assure [the *pro se* litigant] meaningful access to the courts." *Tinaway*, 661 F. Supp. at 940. While the present complaint also centers on securities fraud claims, that alone cannot justify appointment of *pro bono* counsel. The Second Circuit has often explained that *pro bono* lawyer time is a "precious commodity," which cannot be expended on every civil SEC enforcement action. *Cooper*, 877 F.2d at 172.

More importantly, Defendant's difficulty litigating the case and the complexity of the issues presented are factors the Court may consider only *after* the Court determines that a *pro se* defendant has demonstrated the merit of his defense.  *See Hodge*, 802 F.2d at 61 (explaining that the district court should consider factors such as difficulty and complexity only "[i]f the claim meets [the] threshold requirement" that "the indigent's position seems likely to be of substance"). As explained, Defendant's threadbare denials of certain allegations in the complaint are not enough to demonstrate the likely merit of his defense.  While a later stage of the litigation might apprise the Court of the substance of Defendant's defense, the present motion to appoint counsel does not. Thus, the Court must deny the motion to appoint counsel.

### III.     MOTIONS TO VACATE DEFAULT ENTRY

#### A.  Legal Standard

Federal Rule of Civil Procedure 55 provides a two-step process for obtaining default judgment.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  First, when a plaintiff demonstrates that a defendant has been properly served but nevertheless failed to plead or otherwise defend, Rule 55(a) empowers the Clerk to enter a default against the defendant.  Fed. R. Civ. P. 55(a); *Green*, 420 F.3d at 104.  Then, the plaintiff may file a motion for default judgment pursuant to Rule 55(b).  Fed. R. Civ. P. 55(b); *Green*, 420 F.3d at 104.

Relevant here, Rule 55(c) permits the Court to set aside an entry of default for "good cause[.]"  Fed. R. Civ. P. 55(c).  While the rules governing default judgment "play a constructive role in maintaining the orderly and efficient administration of justice," defaults are nevertheless "generally disfavored and reserved for rare occasions[.]"  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  The Second Circuit has often expressed its "strong preference for resolving disputes on the merits," particularly in the context of a default judgment, which is "the most severe

sanction which the court may apply." *Green*, 420 F.3d at 104 (citations and internal quotation marks omitted). *See also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir, 1996) ("Strong public policy favors resolving disputes on the merits."). Accordingly, the "good cause" standard of Rule 55(c) "should be construed generously" and, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. In particular, the court should "grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*." *Id.*

Three substantive criteria must be assessed when considering whether good cause exists to set aside the default entry: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* (citing cases). The court may also consider other "equitable factors," such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id.* For example, defaults are "particularly disfavored by the law when substantial rights are implicated . . . or when substantial sums of money are demanded." *Id.* at 97.

"No one factor is determinative, but each is to be weighed and balance with the others." *Speaks v. Donato*, 214 F.R.D. 69, 73 (D. Conn. 2003). Indeed, the Second Circuit has recognized that the district court must "assess the individual circumstances of a given case and . . . evaluate the credibility and good faith of the parties." *Enron Oil Corp.*, 10 F.3d at 95. The same factors govern both a motion to vacate default entry pursuant to Rule 55(c) and a motion to vacate default judgment pursuant to Rule 60(b), but "courts apply the factors more rigorously in the case of a default judgment" rather than a default entry. *Id.* at 96. The Court will expand on and consider each factor in turn.

B.  Discussion

Starting with the willfulness factor, the Second Circuit has "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless."  *Sec. & Exch. Comm'n v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  Some degree of "deliberate conduct" is required for this factor to weigh against vacating default entry.  *Am. All. Ins. Co.*, 92 F.3d at 60–61; *Green*, 420 F.3d at 108.  *See also Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (explaining that bad faith is not necessary to a finding of willful conduct, rather it is sufficient to conclude that the defendant defaulted deliberately).  For example, a litigant's "strategic decision to default" is generally not excusable.  *Am. All. Ins. Co.*, 92 F.3d at 60.  Likewise, deliberate conduct may be inferred where the litigant effectively obfuscates the good cause inquiry by providing flimsy or untenable reasons for the default.  *See McNulty*, 137 F.3d at 738–39 (collecting cases in which the parties defaulted "for unexplained reasons," "for flimsy reasons," and "for untenable reasons"); *Green*, 420 F.3d at 109 (affirming district court's entry of default judgment where the defendants "offered no explanation for their counsel's failure to appear").

Here, there is no evidence that Defendant has acted willfully in failing to appear and timely answer the complaint.  Defendant cites his 2019 stroke as the reason for his five-month delay in appearing to defend the case and further four-month delay in responding to the complaint.  ECF No. 20 at 1.  As noted with respect to Defendant's request for appointment of *pro bono* counsel, Defendant's filings are somewhat threadbare, particularly with respect to the question of how his prior stroke caused the nine-month delay in filing his response to the complaint.  However, Defendant's reason for the delay is not untenable, and the Court finds no other trace of egregious or bad faith conduct.  For example, although Defendant initially failed to timely appear, his answer

was ultimately filed by the deadline set for the Court, which negates any inference of bad faith. While Defendant was perhaps negligent by not responding to the complaint by the original deadline, mere negligence does not weigh against vacating the default entry. Indeed, even gross negligence, unaccompanied by deliberate or bad faith conduct, would weigh only slightly against vacating the default entry. *Am. All. Ins. Co.*, 92 F.3d at 61; *City View Blinds of N.Y., Inc. v. Trustees of N.Y.C., Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*, No. 21-1037-CV, 2022 WL 1448205, at *2 (2d Cir. May 9, 2022) (summary order) (concluding that the defendant was grossly negligent by failing to appear or monitor its correspondence during the COVID-19 pandemic and reasoning that this factor weighed only somewhat against vacating the default entry). Thus, this factor weighs in favor of vacating the default entry.

The second factor, prejudice to the non-defaulting party, weighs slightly in favor of vacating the default entry. Defendant's failure to timely respond to the complaint has delayed the case by approximately nine months, but that is generally neither an insignificant nor an egregious length of time. The Second Circuit has explained that "delay alone is not a sufficient basis for establishing prejudice. . . . Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *Enron Oil Corp.*, 10 F.3d at 98 (reiterating that "delay standing alone does not establish prejudice"). Plaintiff has not responded to Defendant's motions to vacate the default entry, so there is no basis on which the Court could conclude that Plaintiff would be substantially prejudiced if the default entry were vacated. *Davis*, 713 F.2d at 916. While "[a]n absence of prejudice to the nondefaulting parties [does] not in itself entitle the

default party to relief from" the entry of default, *McNulty*, 137 F.3d at 738, this factor nevertheless weighs somewhat in favor of vacating the default entry.

The third factor, whether Defendant has raised a meritorious defense, weighs slightly against vacating the default entry. A party seeking to vacate an entry of default generally "must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co.*, 92 F.3d at 61 (citation and internal quotation marks omitted). To that end, the Second Circuit has cautioned defaulting parties against raising "mere conclusory statements" in support of a motion to vacate default because such assertions cannot apprise the Court of the meritoriousness of the defense. *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). *See also Moulton Masonry & Constr., LLC*, 779 F.3d at 187 (refusing to vacate default entry where the defaulting party presented merely "conclusory assertions" for failing to timely respond to the complaint but no evidence regarding the merits of the party's defense). However, "in an answer general denials normally are enough to raise a meritorious defense" when supported with "some underlying facts" in the motion to vacate. *Sony Corp.*, 800 F.2d at 320.

Here, Defendant's answer admits certain facts in the complaint pertaining the formation of the limited liability companies, the hotel renovation project, and the dissemination of the offering memorandum. His motions to vacate the default entry do not raise any specific facts that, if found by the factfinder, would establish a viable defense against Plaintiff's claims of securities fraud. *See Enron Oil Corp.*, 10 F.3d at 98 ("The test of [a meritorious defense] is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."). This generally weighs against vacating the default entry,

though some leeway must be given to Defendant given his *pro se* status.  Defendant's answer also denies certain facts crucial to Plaintiff's claims of securities fraud, which effectively mitigates the weight of this factor.  *Sony Corp.*, 800 F.2d at 320 (acknowledging that "in an answer general denials normally are enough to raise a meritorious defense").  Specifically, Defendant denies facts pertaining to the allegedly misleading nature of the offering memorandum and Defendant's alleged failure to satisfy his obligations to the investors.  Thus, the answer permits the Court to infer on which factual disputes his defense will hinge.  Given the generous construction of the good cause standard of Rule 55(c), *see Am. All. Ins. Co.*, 92 F.3d at 61, Defendant's answer mitigates the weight of the third factor.  Accordingly, the third factor weighs only slightly against vacating the default entry.

Furthermore, several equitable factors weigh strongly in favor of vacating the default entry. Most importantly, Defendant is a *pro se* litigant, and the Second Circuit has instructed district courts to vacate default entries freely in such circumstances.  *Enron Oil Corp.*, 10 F.3d at 96.  In addition, Plaintiff demands a substantial sum of money—"all ill-gotten gains" from the alleged scheme, totaling over $800,000, plus civil monetary penalties—as well as significant injunctive relief.  *See id.* at 97 ("Further, defaults . . . are particularly disfavored by the law when substantial rights are implicated . . . or when substantial sums of money are demanded").  In light of those circumstances, proceeding to a consideration of Plaintiff's motion for default judgment would bring about a harsh result.  *See id.* at 96.

In sum, only one factor weighs against vacating the default entry—the meritorious defense factor, and that weighs only slightly.  On the other hand, two specific factors and several equitable factors weigh in favor of vacating the default entry.  As noted, there is no trace of willful, deliberate, or bad faith conduct by Defendant in defaulting, nor would there be a notable degree of

prejudice to Plaintiff in vacating the default entry.  The litigation implicates a significant liability and the loss of substantial rights.  Moreover, Defendant's *pro se* status counsels in favor of protecting him "from waiving his right to be heard because of his . . . lack of legal knowledge." *Enron Oil Corp.*, 10 F.3d at 96.

Considering this balance of factors against the Second Circuit's "strong preference for resolving disputes on the merits" and instruction that any doubt "should be resolved in favor of the defaulting party," the Court concludes that good cause exists to vacate the default entry.  *Green*, 420 F.3d at 104; *Enron Oil Corp.*, 10 F.3d at 96.  Accordingly, the Court grants Defendant's "motion to explain," ECF No. 20, which the Court construes as a motion to vacate the default entry.  His similar motions, ECF Nos. 18 and 22, are denied as moot.  In addition, the Court denies as moot ECF No. 14, Plaintiff's motion for default judgment.

## IV.    CONCLUSION

For the reasons described above, Defendant's motion to appoint counsel, ECF No. 16, is DENIED.  Defendant's motion to vacate the default entry, ECF No. 20, is GRANTED.  The order of default entry, ECF No. 13, is hereby VACATED.  Defendant's other motions to vacate the default entry, ECF Nos. 18 and 22, are DENIED as moot.  In addition, Plaintiff's motion for default judgment, ECF No. 14, is DENIED as moot.

The Court further directs the parties to file a joint Rule 26(f) Report by **August 9, 2022.** Defendant is forewarned that future failures to comply with the Court's deadlines in this case will not be countenanced.

**SO ORDERED** at Hartford, Connecticut, this 12th day of July, 2022.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE